UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

ANTHONY DUNA,

                    Plaintiff,

     v.

ALAN LIMA, et al.,

                  Defendants.

Case No. 2:23-cv-00034-RFB-NJK

SCREENING ORDER ON
FIRST AMENDED COMPLAINT

Plaintiff, who is incarcerated in the custody of the Nevada Department of Corrections ("NDOC"), has submitted a first amended complaint ("FAC") pursuant to 42 U.S.C. § 1983. (ECF No. 10.) The Court accepts the FAC as the operative complaint in this case. Plaintiff has paid the $402 filing fee in full. Plaintiff has also filed various motions. (ECF Nos. 6, 7, 8, 9, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 25, 26, 27.) The Court first screens Plaintiff's FAC under 28 U.S.C. § 1915A and then considers his motions.

## I.    SCREENING STANDARD

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1),(2). Pro se pleadings, however, must be liberally construed. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act (PLRA), a federal court must dismiss a prisoner's claim, if the

allegation of poverty is untrue," or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. See Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. See Chappel v. Lab. Corp. of America, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. See Morley v. Walker, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. See Warshaw v. Xoma Corp., 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a pro se complainant are held to less stringent standards than formal pleadings drafted by lawyers. See Hughes v. Rowe, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. Id.

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." Id. "When there are well-pleaded factual allegations, a court should assume their veracity and then

2

determine whether they plausibly give rise to an entitlement to relief." Id. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Finally, all or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte* if the prisoner's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). See Neitzke v. Williams, 490 U.S. 319, 327-28 (1989); see also McKeever v. Block, 932 F.2d 795, 798 (9th Cir. 1991).

## II.    SCREENING OF FAC

In the FAC, Plaintiff sues multiple Defendants for events that took place while Plaintiff was incarcerated at High Desert State Prison ("HDSP"). (ECF No. 10 at 1.) Plaintiff sues Defendants Alan Lima, Lopez, Kelly, Moka, D. Roudugize, Cody Castillino, Carlos, James Scally, Zungia, Dontae Michael, Dr. Manlang, Migual Porttillo, Thurston Moore, Julie Williams, B. Shields, Couvinger, Johnson, Julie, E. Prunchak, and Shabazz. (Id. at 1-3.) Plaintiff brings three counts and seeks monetary relief. (Id. at 3-7.) The Court will consider Plaintiff's claims in turn.[1]

### A.    Count I

In Count I, Plaintiff alleges that Defendants Moore, Lima, Kelly, Portillo, Couvinger, Johnson, and Shields tried to move Plaintiff to Unit 8 to house him with an inmate named Saul Farvela, even though Plaintiff had previously reported that Farvela had extorted and sexually assaulted him. (ECF No. 10 at 5.) After refusing a cell move several times, Plaintiff was poisoned. (Id.) Farvela got a cell phone, which he used to send Plaintiff's father pictures and to tell Plaintiff's father that correctional officers work for him. (Id.) Plaintiff's father contacted Defendant Castillino, who had Plaintiff relocated. (Id.) Plaintiff

---

[1] The Court notes that the allegations and claims in the FAC are sometimes difficult to understand. However, in light of Plaintiff's pro se status, the Court will do its best to understand Plaintiff's factual allegations and the legal claims that he is trying to bring.

then caught CERT search and rescue bringing Farvela "in confinement 4-C-5" where Plaintiff caught him running out of the sallyport with CERT right behind him. (Id.) Plaintiff's mother contacted Castillino to ask that he collect evidence of the incident, but he never did. (Id.) Plaintiff contacted the FBI and an agent by the name of Mike said that he would take care of it. (Id.) Mike also told Plaintiff that hair samples should be sent to an outside doctor because Plaintiff had been poisoned. (Id.)

Based on these allegations, Plaintiff brings a failure to protect claim and a First Amendment claim regarding stolen legal materials. (Id.) None of the allegations in Count I deal with stolen legal materials, and the Court dismisses any such claim from Count I without prejudice. (Id.) Plaintiff alleges that he was extorted and assaulted by Farvela, that he was poisoned, and that several Defendants attempted to move Plaintiff into a unit with Farvela despite the previously reported assault. The Court construes each of these as a separate failure to protect claim. The Court will first discuss the standard for stating a failure to protect claim and then will consider each of Plaintiff's claims separately.

Under the Eighth Amendment, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Farmer v. Brennan, 511 U.S. 825, 833 (1994). To establish a violation of this duty, the prisoner must establish that prison officials were deliberately indifferent to serious threats to the inmate's safety. Id. at 834. To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." Id. at 837. Prison officials may not escape liability because they cannot, or did not, identify the specific source of the risk; the serious threat can be one to which all prisoners are exposed. Id. at 843.

A prisoner seeking a remedy for unsafe conditions does not have to await a tragic event such as an actual assault before obtaining relief. Id. at 845. "An inmate seeking an injunction on the ground that there is a contemporary violation of a nature likely to

continue must adequately plead such a violation." Id. at 845-46 (quotations and citation omitted). Plaintiff must plead that prison officials are "knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so." Id. at 846.

A defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal participation by the defendant." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under [§]1983." Id.; see also Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) (holding that "[b]ecause vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

### 1.  Initial Extortion and Assault

The Court finds that Plaintiff fails to state a colorable failure to protect claim based on the allegation that Farvela extorted and assaulted him. Plaintiff briefly mentions that inmate Farvela had at some earlier time extorted and assaulted him. However, he does not provide any further details about that incident. To the extent that Plaintiff intended to bring a claim based on this earlier incident, the allegations in the FAC are too brief to state a colorable claim, and the Court dismisses this claim without prejudice and with leave to amend.

### 2.  Poisoning

The Court finds that Plaintiff fails to state a colorable failure to protect claim based on the allegation that he was poisoned. Plaintiff alleges that he was poisoned. But he does not provide any details about who was responsible for poisoning or whether any Defendants knew about a risk that Plaintiff would be poisoned and were deliberately indifferent to that risk. Accordingly, to the extent that Plaintiff intended to bring a claim

1  based on being poisoned, the FAC fails to state a colorable claim, and I dismiss this

2  without prejudice and with leave to amend.

### 3.  Attempts to Move Plaintiff Back with Farvela

4  The Court finds that Plaintiff fails to state a colorable failure to protect claim based

5  on the alleged attempt to house him together with Farvela. Plaintiff vaguely alleges that

6  Defendants Moore, Lima, Kelly, Portillo, Couvinger, Johnson, and Shields, kept trying to

7  move him back into a unit with Farvela, but he does not provide any specific details about

8  what any individual Defendant actually did. In order to state a colorable claim, Plaintiff

9  cannot simply allege that all the Defendants were collectively responsible for some issue

10  at HDSP. Rather, Plaintiff must allege specific facts showing what each individual

11  Defendant did that violated his rights.

12  The Court notes that Plaintiff names Castillino as a Defendant, but it is not clear

13  what claim Plaintiff is bringing against Castillino. Plaintiff appears to allege that after his

14  father called about Farvela, Castillino moved Plaintiff to a different unit. This would seem

15  to suggest that after Castillino heard about the problem, he addressed it. Plaintiff also

16  alleges that at some point after Castillino moved him, CERT guards brought or tried to

17  bring Farvela to Plaintiff's new unit. But Plaintiff does not allege that Castillino was

18  involved in the attempt to bring Farvela into Plaintiff's new unit. Accordingly, the

19  allegations do not support a colorable failure to protect claim against Castillino.

20  The Court dismisses Plaintiff's failure to protect claim based on the alleged

21  attempts to house him in Farvela's unit without prejudice and with leave to amend. If

22  Plaintiff wishes to bring this claim in any amended complaint, Plaintiff must allege specific

23  facts about each individual Defendant showing that each individual Defendant was

24  deliberately indifferent to a serious threat to Plaintiff's safety.

### B.  Count II

26  In Count II, Plaintiff alleges that after Farvela sexually assaulted him, he noticed

27  heart pain and oversize bumps all around the tip of his penis. (ECF No. 10 at 6.) He

28  reported these symptoms to Dr. Manlang and Dr. Julie. (Id.) Both doctors told Plaintiff that

he did not HIV. (Id.) Dr. Manlang also told plaintiff that there were no signs of poison in Plaintiff's blood. (Id.) Dr. Julie told Plaintiff that the bumps are not warts and that they are from masturbating. (Id.) But that is a lie. (Id.) Plaintiff did not have bumps on his penis before the sexual assault, and the bumps are starting to spread. (Id.) And Plaintiff's heart is now skipping a beat, which it never used to do. (Id.)

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976). A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate. Farmer v. Brennan, 511 U.S. 825, 828 (1994). "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012).

To establish the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted). To satisfy the deliberate indifference prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Id. "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. (internal quotations omitted). When a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury. See Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference").

The Court finds that Plaintiff states a colorable claim of deliberate indifference to a serious medical need. The Court liberally construes the complaint as alleging that after being sexually assaulted Plaintiff started to develop bumps around the head of his penis. He told Dr. Manlang and Dr. Julie about the bumps, but neither has done anything to determine the cause of the bumps or to treat the bumps. Dr. Julie told Plaintiff that the bumps were from masturbating, but she knows that is not true.

Plaintiff has also told Dr. Manlang and Dr. Julie that he has been experiencing heart problems since being poisoned and that his heart skips a beat. Dr. Manlang tested Plaintiff's blood and did not find poison in his blood. But Dr. Manlang and Dr. Julie have not taken any other steps to diagnose or treat Plaintiff's ongoing heart issues.

Based on these allegations, Dr. Manlang and Dr. Julie are aware that Plaintiff has large bumps on the head of his penis, which are spreading, and ongoing heart problems. They have not taken any steps to either diagnose or treat these ongoing medical conditions. This sufficient to state a colorable claim at this preliminary screening stage.

**C. Count III**

In Count III, Plaintiff alleges that Lima, Moore, and Lopez retaliated against him numerous times by taking his legal files. (ECF No. 10 at 7.) On March 9, 2023, Lima retaliated against Plaintiff by preventing him from filing an amended complaint in this case. (Id.) From March 14, 2023, to March 20, 2023, CERT went to the law library to read Plaintiff's case. (Id.) Defendants Julie Williams and Scally have repeatedly denied Plaintiff's grievances. (Id.)

Based on these allegations, Plaintiff brings a First Amendment retaliation claim and a claim based on his legal files being taken "and trashed." The Court construes Plaintiff's claim regarding his legal files as a claim of denial of access to the courts. The Court will consider each of these claims in turn.

**1. First Amendment Retaliation**

Prisoners have a First Amendment right to file prison grievances and to pursue civil rights litigation in the courts. Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2004).

1   "Without those bedrock constitutional guarantees, inmates would be left with no viable

2   mechanism to remedy prison injustices. And because purely retaliatory actions taken

3   against a prisoner for having exercised those rights necessarily undermine those

4   protections, such actions violate the Constitution quite apart from any underlying

5   misconduct they are designed to shield." Id.

6        To state a viable First Amendment retaliation claim in the prison context, a plaintiff

7   must allege: "(1) [a]n assertion that a state actor took some adverse action against an

8   inmate (2) because of (3) that prisoner's protected conduct, and that such action (4)

9   chilled the inmate's exercise of his First Amendment rights, and (5) the action did not

10  reasonably advance a legitimate correctional goal." Id. at 567-68. Total chilling is not

11  required; it is enough if an official's acts would chill or silence a person of ordinary

12  firmness from future First Amendment activities. Id. at 568-69.

13       The Court finds that Plaintiff states a colorable First Amendment retaliation claim.

14  The Court liberally construes the FAC as alleging that in retaliation for Plaintiff's

15  grievances, Moore, Lima, and Lopez have repeatedly stolen or destroyed Plaintiff's legal

16  files. These allegations are sufficient to state a colorable claim against Moore, Lima, and

17  Lopez at this preliminary screening stage.

18       To the extent that Plaintiff is attempting to bring a First Amendment retaliation claim

19  based on the denial of his grievances, the Court finds that Plaintiff fails to state a colorable

20  claim. Plaintiff does not allege any facts to support that the denial of his grievance chilled

21  his exercise of his First Amendment rights, or that the denial of these grievances would

22  silence a person of ordinary firmness from future First Amendment activities. Therefore,

23  the Court dismisses any First Amendment retaliation claim based on the denial of

24  grievances without prejudice.

**2.  Denial of Access to the Courts.**

26       Prisoners have a constitutional right of access to the courts. See Lewis v. Casey,

27  518 U.S. 343, 346 (1996). This right "requires prison authorities to assist inmates in the

28  preparation and filing of meaningful legal papers by providing prisoners with adequate

CRITICAL

law libraries or adequate assistance from persons trained in the law." <u>Bounds v. Smith</u>, 430 U.S. 817, 828 (1977). This right, however, "guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." <u>Lewis</u>, 518 U.S. at 356. It is this "capability, rather than the capability of turning pages in a law library, that is the touchstone" of the right of access to the courts. <u>Id.</u> at 356-57.

To establish a violation of the right of access to the courts, a prisoner must establish that he or she has suffered an actual injury, a jurisdictional requirement that flows from the standing doctrine and may not be waived. <u>Id.</u> at 349. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." <u>Id.</u> at 348. Delays in providing legal materials or assistance that result in actual injury are "not of constitutional significance" if "they are the product of prison regulations reasonably related to legitimate penological interests." <u>Id.</u> at 362. The right of access to the courts is limited to non-frivolous direct criminal appeals, habeas corpus proceedings, and § 1983 actions. <u>Id.</u> at 353 n.3, 354-55.

The Court finds that Plaintiff fails to state a colorable denial of access to the courts claim. Based on the allegations in the complaint, it appears that Plaintiff's claim is regarding this case. But Plaintiff has not suffered an injury in this case, such as the inability to meet a filing deadline or present a claim. Accordingly, the Court dismisses this claim without prejudice and with leave to amend.

### D.  Other Defendants

The FAC does not include any specific allegations about Defendants Moka, D. Roudugize, Cody Castillino, Carlos, Zungia, Dontae Michael, E. Prunchak, and Shabazz. As such, it is not clear what claims Plaintiff is bringing against these Defendants, and the Court dismisses any claims against these Defendants without prejudice.

### III.  LEAVE TO AMEND

Plaintiff is granted leave to file a second amended complaint to cure the deficiencies of the FAC. If Plaintiff chooses to file a second amended complaint, he is

advised that a second amended complaint supersedes (replaces) the original complaint, and any previously filed amended complaints, and, thus, the second amended complaint must be complete in itself. See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1546 (9th Cir. 1989) (holding that "[t]he fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original"); see also Lacey v. Maricopa Cnty., 693 F.3d 896, 928 (9th Cir. 2012) (holding that for claims dismissed with prejudice, a plaintiff is not required to reallege such claims in a subsequent amended complaint to preserve them for appeal). Plaintiff's second amended complaint must contain all claims, defendants, and factual allegations that Plaintiff wishes to pursue in this lawsuit. Moreover, Plaintiff should file the second amended complaint on this Court's approved prisoner civil rights form, and it must be entitled "Second Amended Complaint."

If Plaintiff chooses to file a second amended complaint curing the deficiencies, as outlined in this order, Plaintiff will file the second amended complaint within 60 days from the date of entry of this order. If Plaintiff chooses not to file a second amended complaint curing the stated deficiencies, this action will proceed only on Plaintiff's claim of deliberate indifference to a serious medical need against Dr. Manlang and Dr. Julie and Plaintiff's First Amendment retaliation claim against Moore, Lima, and Lopez.

IV.    PLAINTIFF'S MOTIONS

A.    ECF Nos. 6, 8, 11, 23, 24

Plaintiff has filed two motions "to pull up surveillance." (ECF No 6, 8.) In his motions Plaintiff appears to be requesting surveillance footage. Plaintiff has also filed a motion for subpoenas, a motion to issue summons, and a motion to serve various Defendants (ECF Nos. 11, 23, 24). This case is at a prescreening stage. The Defendants will not be served until the Court completes the screening process and determines which of Plaintiff's claims should proceed. As such, Plaintiff's motions for surveillance video, subpoenas, summons, and service are premature, and the Court denies these motions without prejudice.

///

**B.   ECF Nos. 7, 12, 17, 18, 22, 25, 26, 27**

Plaintiff has filed a motion "to make a statement for the FBI." (ECF No. 7.) His motion includes a lengthy recital of his interactions with inmate Farvela and various guards. (Id.) It appears that Plaintiff wants the Court to pass this document on to the FBI. Plaintiff has also filed a motion "for the FBI to issue a warrant to retrieve NDOC computers and hard drives. (ECF No. 12.) And Plaintiff has filed a motion titled "motion for a judicial notice for the FBI to suspend and detain listed Defendants . . . until further investigation." (ECF No. 17.) Plaintiff has also filed a motion "for judicial notice of documents and emergency TRO with injunction." (ECF No. 18.) In this motion, Plaintiff asks that this Court review the documents that he has filed, as well as his various motions, and then forward all those documents to the FBI. Plaintiff has also filed two motions "for criminal complaint" (ECF Nos. 22, 25), a motion for an arrest warrant (ECF No. 26), and a motion for a search warrant (ECF No. 27.)

Based on these motions, it appears that Plaintiff wants the Court to order the FBI to open an investigation and bring criminal charges against the Defendants based on his allegations. However, the Court does not have the authority to direct the FBI to investigate crimes or bring charges. "[T]he Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case." See United States v. Nixon, 418 U.S. 683, 693 (1974).

This is not a criminal action; it is a civil rights case. The purpose of this case is not to determine whether any of the Defendants engaged in criminal conduct, but to determine whether any of the Defendants violated Plaintiff's constitutional rights. Plaintiff cannot bring criminal charges against the Defendants in this case. It is up to the FBI and the United States Attorney to decide whether to investigate and bring federal charges, and it is up to state officials to decide whether to bring state charges. Accordingly, Plaintiff's motions regarding the FBI, and his requests regarding criminal charges are denied with prejudice. If Plaintiff believes that the FBI should investigate his allegations and bring criminal charges, he may contact the FBI directly.

**C.  ECF Nos. 14, 15, 16, 19, 20**

Plaintiff has filed two motions for a preliminary injunction or temporary restraining order. (ECF Nos. 14, 19.) The Court will set a hearing for these motions in a separate order. ECF No. 15 appears to be a duplicate copy of ECF No. 14, and ECF No. 20 appears to be a duplicate of ECF No. 19. As such, the Court denies these motions. ECF No. 16 appears to be another motion for a temporary restraining order and preliminary injunction, but the motion includes only an initial cover page and then a declaration by another inmate. As such, the Court denies this motion as well.

**V.    CONCLUSION**

For the foregoing reasons, **IT IS ORDERED** that the Court accepts the FAC (ECF No. 10) as the operative complaint in this case. The Clerk of the Court will send Plaintiff a courtesy copy of the FAC.

**IT IS FURTHER ORDERED** that Plaintiff's failure to protect claim is dismissed without prejudice and with leave to amend.

**IT IS FURTHER ORDERED** that Plaintiff's claim of deliberate indifference to a serious medical need with proceed against Defendants Dr. Julie and Dr. Manlang.

**IT IS FURTHER ORDERED** that Plaintiff's First Amendment retaliation claim will proceed against Defendants Moore, Lima, and Lopez.

**IT IS FURTHER ORDERED** that Plaintiff's denial of access to the courts claims is dismissed without prejudice and with leave to amend.

**IT IS FURTHER ORDERED** that Defendants Kelly, Moka, D. Roudugize, Cody Castillino, Carlos, James Scally, Zungia, Dontae Michael, Migual Porttillo, Julie Williams, B. Shields, Couvinger, Johnson, E. Prunchak, and Shabazz are dismissed from the entirety of the case without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's motions seeking surveillance video and subpoenas (ECF Nos. 6, 8, 11) are denied without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's motions seeking summonses and service (ECF Nos. 23, 24) are denied without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's motions regarding the FBI and criminal charges (ECF Nos. 7, 12, 17, 18, 22, 25, 26, 27) are denied with prejudice.

**IT IS FURTHER ORDERED** that the Court will issue a separate order scheduling Plaintiff's motions for a temporary restraining order and preliminary injunction (ECF Nos. 14, 19).

**IT IS FURTHER ORDERED** that Plaintiff's duplicative motions for a temporary restraining order and preliminary injunction (ECF Nos. 15, 20) are denied.

**IT IS FURTHER ORDERED** that Plaintiff's incomplete motion for a temporary restraining order and preliminary injunction (ECF No. 16) is denied.

**IT IS FURTHER ORDERED** that, if Plaintiff chooses to file a second amended complaint curing the deficiencies of the FAC, as outlined in this order, Plaintiff will file the second amended complaint within 60 days from the date of entry of this order.

**IT IS FURTHER ORDERED** that the Clerk of the Court will send to Plaintiff the approved form for filing a § 1983 complaint and instructions for the same. If Plaintiff chooses to file a second amended complaint, he should use the approved form and he will write the words "Second Amended" above the words "Civil Rights Complaint" in the caption.

**IT IS FURTHER ORDERED** that if Plaintiff chooses not to file a second amended complaint curing the stated deficiencies, this action will proceed only on Plaintiff's claim of deliberate indifference to a serious medical need against Dr. Manlang and Dr. Julie and Plaintiff's First Amendment retaliation claim against Moore, Lima, and Lopez.

DATED THIS 16th day of May 2023.

_____
RICHARD F. BOULWARE, II
United States District Court